[No. 32137. Department One. January 2, 1953.]

CLAUDE E. TURNER, *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.[1]

[1]Reported in 251 P. (2d) 883.

*Ralph Armstrong*, for appellant.

*The Attorney General* and *Harry Margolis, Assistant*, for respondent.

DONWORTH, J.—This is an appeal from a judgment of the superior court dismissing a claimant's appeal from an order of the board of industrial insurance appeals.

Appellant workman was injured June 3, 1947, while engaged in extrahazardous employment. His claim for industrial insurance benefits was allowed for time loss and medical treatment, and on March 17, 1950, by order of the supervisor of industrial insurance, his claim was closed with an award of forty per cent of the $3,600 maximum then allowable for unspecified permanent partial disabilities.

He appealed to the board of industrial insurance appeals, contending that he had sustained a far greater permanent partial disability than the forty per cent allowed.

On June 5, 1951, at a hearing before a board examiner, he was permitted, without objection by respondent, to amend his notice of appeal to allege that he was permanently totally disabled.

The board, by order dated November 6, 1951, directed the supervisor to pay appellant $3,600, less the monetary amount of awards previously paid to him. The $3,600 ordered to be paid was equivalent to one hundred per cent of the maximum allowable for unspecified permanent partial disabilities.

Appellant was dissatisfied with this award and appealed to the superior court, contending that he was totally and permanently disabled. The action was tried before the court, sitting with a jury. After appellant's case in chief as contained in the board record had been read at the trial, respondent challenged the sufficiency of the evidence to sustain an additional award and moved for a dismissal. The court sustained the challenge and granted the motion. Appellant has appealed from the judgment of dismissal entered by the court.

In dismissing the action, the trial court relied upon our decision in *Karniss v. Department of Labor & Industries*, 39 Wn. (2d) 898, 239 P. (2d) 555, wherein we considered §§ 2 through 6 of chapter 219, Laws of 1949, p. 714 (*cf.* RCW 51.52.010 *et seq.*), which created, and defined the powers of, the board of industrial insurance appeals. In the *Karniss* case, we concluded that the board is an appellate body which reviews the orders of the supervisor and that the terminal date, by reference to which the amount of compensation payable shall be determined, is the date of the supervisor's order, and not the date of the board's order.

In applying the principle of the *Karniss* case, the trial court held that evidence of conditions developing after the date of the supervisor's order of March 17, 1950, could not be considered, and that, as a matter of law, there was not sufficient evidence of total and permanent disability existing on March 17, 1950, to take the case to the jury.

The facts of the case are not seriously in dispute. Appellant suffered severe injuries when he fell from a scaffolding and struck his head against a concrete wall thirty feet below. He was unconscious for five days and in the hospital for several weeks. As a result of his fall, he suffered traumatic brain damage.

The evidence presented at the hearing before the board on June 5, 1951, revealed that he had a constant headache, frequent dizzy spells, and his memory processes had been impaired. He had a total loss of hearing in one ear and a 47.6% loss of hearing in the other. He was not able to think as fast as he did prior to his injury, and, when he was unable to perform some task which he could formerly do, he became nervous and his headache "flared up." He had a neurotic fear of high places and could not work off the ground. His wife testified to a definite change in his personality since his injury, in that he had become sarcastic, irritable, and nervous.

Appellant's medical witness testified concerning an additional objective symptom, to wit: permanent low back injuries which, in his opinion, resulted from the fall. This

witness examined appellant for the first time on April 25, 1950, approximately one month after the date of the supervisor's order.

Despite his injuries, appellant, who had been a carpenter prior to his fall, secured employment as a millwright in September, 1947, and worked until December, 1947. He worked very little in 1948. In July, 1949, he secured employment again as a millwright in a sawmill. His duties consisted of setting up, adjusting, and repairing machinery in the mill. He was steadily employed on this job until May, 1950. It was while he was so employed that the supervisor closed his claim on March 17, 1950.

Appellant testified that he almost lost his job on two occasions because he was unable to work on a scaffolding. His foreman, however, gave him "the breaks that way," and he was thus enabled to hold his job until he became so nervous and his head bothered him so much that he had to quit work permanently in May, 1950.

Appellant has made two assignments of error: (1) that the court erred in determining that there was no evidence of permanent total disability to submit to the jury; and (2) that the court erred in following the *Karniss* case and refusing to consider evidence relating to matters which transpired subsequent to the date of the supervisor's order.

We shall first consider his second assignment and his argument that the rule of the *Karniss* case is not applicable to what he calls "a direct appeal," *i.e.*, a case which does not arise from an application to reopen a claim for aggravation of disability.

In whatever way a case arises, however, the issue before the board is the correctness of the supervisor's order. The issue before the superior court is whether the supervisor's order, as modified by the board, is correct. The board and the superior court each exercise only appellate jurisdiction, and the trial court in the present case correctly interpreted the rule of the *Karniss* case as precluding its consideration of evidence relating to any change in appellant's physical condition occurring after the date of the supervisor's order.

Appellant's first assignment of error is supported by the

argument that, even within the rule of the *Karniss* case, there was sufficient evidence of permanent total disability to carry the case to the jury. He relies upon the rule that a challenge to the sufficiency of his evidence admits the truth thereof and all inferences which reasonably can be drawn therefrom and requires that it be interpreted most strongly against respondent and in the light most favorable to him, and that, even though some of his evidence is unfavorable to him, he is not bound thereby, but is entitled to have his case submitted to the jury on the basis of the evidence which is most favorable to his contention. *Mutti v. Boeing Aircraft Co.*, 25 Wn. (2d) 871, 172 P. (2d) 249.

The only medical evidence of permanent total disability was given by the physician who examined appellant, at the request of his attorney, on April 25, 1950, which was approximately one month after the date of the supervisor's order. This physician testified that, in his opinion, appellant was totally and permanently disabled as a result of his accident. It clearly appears from the record, however, that in stating his opinion the witness was referring to appellant's condition as of the date he testified, which was May 22, 1951, more than one year after the supervisor had closed the claim.

On cross-examination, the physician testified that on April 25, 1950, the date of his first examination, appellant was able to do light work.

Appellant was steadily employed on the date of the supervisor's order (March 17, 1950) and had been so employed for approximately nine months prior thereto. As a matter of law, therefore, he was not permanently totally disabled on the terminal date for fixing appellant's compensation in this case. RCW 51.08.160. *He had steady employment*; he was not merely fitted to do odd jobs or special work not generally available. Nor did appellant produce any evidence that his working caused him serious discomfort or pain or that his life or health was endangered thereby. *Kuhnle v. Department of Labor & Industries*, 12 Wn. (2d) 191, 120 P. (2d) 1003, and cases cited therein, are readily distinguishable.

The trial court was, therefore, correct in sustaining the challenge to the sufficiency of the evidence, since there was no evidence from which the jury could have found that on March 17, 1950, appellant was totally and permanently disabled as defined by RCW 51.08.160.

Appellant has also argued that, if the rule of the *Karniss* case be applied to this appeal, it will result in great hardship and injustice to him, in that his physical condition was fixed on March 17, 1950, that it would be difficult for him to prove any aggravation of his disabilities since that date, that he was in truth and in fact permanently totally disabled and unemployable on that date, that he was able to hold his job solely because his foreman gave him "the breaks," and that, if he be denied an opportunity on this appeal to secure compensation for a permanent total disability, he will be unable in the future to prove sufficient aggravation of his disabilities to secure a reopening of his claim.

There appears to be some basis for this argument. There is no doubt that appellant has shown admirable fortitude in working so industriously between July, 1949, and May, 1950, after having suffered a severe, crippling injury in June, 1947. We cannot, however, ignore the intent of the legislature to create the board of industrial insurance appeals as an appellate body whose duty it is to review the supervisor's order. Nor can we ignore the fact that, whether by grace of appellant's foreman or otherwise, he was steadily employed at the time of the supervisor's order and, therefore, could not then have been held to be unemployable or permanently totally disabled within the statutory definition of permanent total disability.

The question of aggravation is not now before us, but, in view of appellant's contention, we must assume that if, since March 17, 1950, he has become so nervous and disabled from his injuries that he cannot be gainfully employed, that fact may be proved by his own testimony together with that of competent medical experts based, at least in part, upon objective symptoms. The trial court's judgment of dismissal was specifically made without prejudice to appellant's

right to apply for reopening of his claim because of aggravation.

■  Appellant's opening brief was filed in this court on July 10, 1952, about one week after publication of our decision in *Petersen v. Department of Labor & Industries*, 40 Wn. (2d) 635, 245 P. (2d) 1161, in the Washington Decisions. In the *Petersen* case, we held that a motion to dismiss an industrial insurance case in the superior court lies at any time, but whenever made, it calls for a consideration of the entire record.  Accordingly, we have reviewed the entire record.  There is nothing in respondent's part of the board record which sustains appellant's contention that he is permanently totally disabled.  It would be an idle act to return the cause to the trial court when it must reach the same conclusion on the entire record as it did on appellant's case in chief with reference to his claim of permanent total disability.

Appellant urges in his reply brief the contention that he was entitled to compensation for a specified disability (total loss of hearing in one ear) in addition to compensation for one hundred per cent of the maximum allowable for permanent partial unspecified disability. He argues that the trial court, in any event, should have submitted the case to the jury on this theory.

■  We need not determine the correctness of appellant's interpretation of the law (§ 1 (f), p. 631, chapter 209, Laws of 1941) which was in effect at the time of his injury, for it is well settled that a contention may not be presented for the first time in a reply brief. Rule on Appeal 41, 34A Wn. (2d) 42; *Schrock v. Gillingham*, 36 Wn. (2d) 419, 219 P. (2d) 92.

The same rule applies to appellant's argument that, by reason of respondent's failure to object to the admission of evidence, the scope of the hearing before the board and of the review in the superior court was enlarged to include a consideration of evidence bearing upon matters which transpired after the date of the supervisor's order.

■  In its judgment of dismissal, the trial court expressly provided:

" . . . that this dismissal shall be without prejudice to plaintiff's right to receive additional compensation upon a proper showing that there has been an increase of disability subsequent to March 17, 1950."

Since there was no evidence that appellant was permanently totally disabled on March 17, 1950, the trial court was correct in dismissing the action without prejudice to appellant's right to claim additional compensation for aggravation.

The judgment appealed from is affirmed.

SCHWELLENBACH, C. J., MALLERY, GRADY, and WEAVER, JJ., concur.

